## UNION PACIFIC RAILROAD COMPANY V. STATE OF NEBRASKA.

FILED FEBRUARY 28, 1911. No. 16,307.

1. **Indictment: DUPLICITY.** Where a statute makes punishable the doing of one thing or another, thus specifying a considerable number of things, then by proper and ordinary construction a person who in one transaction does all violates the statute but once and incurs but one penalty, and an indictment or information on such a statute may allege in a single count that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunction "and" where the statute has "or," and it will not be double, or subject to an attack for duplicity.

2. **Criminal Law: VENUE: EVIDENCE.** The venue in a criminal prosecution may be proved by facts and circumstances; but, where no direct evidence is produced for that purpose, the facts and circumstances relied on must be such as to presumptively establish that fact beyond a reasonable doubt.

ERROR to the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Reversed.*

*N. H. Loomis, Edson Rich, E. F. Pettis* and *E. H. Crocker,* for plaintiff in error.

*William T. Thompson, Attorney General,* and *George W. Ayres, contra.*

BARNES, J.

The Union Pacific Railroad Company was convicted in the district court for Lancaster county of a violation of the provisions of section 7, art. IX, ch. 72, Comp. St. 1909, commonly called the "anti-pass law," and was adjudged to pay a fine of $100 and the costs of prosecution. To reverse that judgment the defendant has brought the case here by a petition in error.

Defendant's first contention is that the district court erred in overruling its motion to require the state to elect upon which charge contained in the information it would proceed. In the charging part of the information it is stated that "the said Union Pacific Railroad Company did then and there unlawfully and purposely issue and give to one Francis A. Graham a free pass." And it is therefore argued that the information charges two distinct and separate offenses. It is sufficient to say that the information contains but one count, which charges a single violation of the section of the statutes above mentioned; and it is therefore evident that the prosecutor availed himself of the rule that, where a statute makes punishable the doing of one thing or another, thus specifying a considerable number of things, then by proper and ordinary construction a person who in one transaction does all violates the statute but once and incurs only one penalty. It follows that "the indictment on such a statute may allege in a single count that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunc-

tion 'and' where the statute has 'for,' and it will not be double," or subject to an attack for duplicity. 1 Bishop, New Criminal Procedure (4th ed.) sec. 436. This rule is decisive of the question, and we are of opinion that the defendant's motion was properly overruled.

Defendant's second contention is that the state produced no evidence in support of the charge that the offense was committed in Lancaster county; and it is urged that, for the failure of the prosecutor to prove the venue, the judgment of the district court should be reversed. It appears that the cause was tried on a stipulation of facts, and no oral evidence was produced by either party. An examination of the bill of exceptions discloses that the place where the pass in question was issued and delivered is nowhere mentioned in the stipulation, and that the state produced no direct evidence upon that question. It is contended, however, that the venue, like any other fact, may be established by the circumstances, or by circumstantial evidence. This rule is not questioned by the defendant, and therefore it remains for us to determine whether the facts and circumstances shown by the record are sufficient to establish by inference, or by legitimate presumptions, beyond a reasonable doubt, the fact that the crime was committed in Lancaster county.

We find that Doctor Graham, to whom the annual pass in question was issued, is described in the stipulation as "Doctor F. A. Graham of Lincoln," and it is stated in the contract, which is relied on as a defense, that he was appointed surgeon at Lincoln, Nebraska, for the Union Pacific hospital fund, and was to perform the duties of district surgeon for the Union Pacific hospital fund at Lincoln, Nebraska. The contract is signed by Doctor Graham as district surgeon, and from those facts alone we are asked to presume that the pass in question was issued and delivered to him in Lancaster county, Nebraska. To do this requires us to go a step further in the way of presumption than has been done in any adjudicated case to which our attention has been directed. On the other hand,

it appears by the contract and stipulation that for the years 1906 and 1907 the doctor had been acting under the contract, and had been supplied with an annual pass for each of those years, upon which he could travel free of charge over the defendant's lines of railroad to and from any place in this state. Therefore, we may reasonably presume that he went to the city of Omaha, in Douglas county, the place where the defendant maintains its general offices and transacts all of its general business, to renew his contract and receive his annual pass.

Again, it may be stated that it clearly appears from the record that the matter of venue was entirely overlooked by both the prosecutor and the trial court, for the instructions do not embrace that question in any form whatsoever. The court, in charging the jury as to the facts which the state was required to prove in order to authorize a conviction, failed to state that the prosecution must establish the fact that the transaction complained of took place in Lancaster county, Nebraska, as charged in the information. Considering the condition of the record upon that point, it seems reasonably certain that, if that question had been properly submitted to the jury, they would not have convicted the defendant. While, as above stated, the venue may be established by circumstantial evidence, still the circumstances must be such as to prove that fact beyond a reasonable doubt. We think the evidence was insufficient to meet that requirement, and therefore does not sustain the verdict.

Other questions are discussed in the brief of counsel for the defendant which will not be considered at this time, but we may say in passing that we see no reason to depart from the rule announced in *State v. Martyn*, 82 Neb. 225. It may not be out of place to suggest that counsel are mistaken in their view that defendant was tried on a charge of violating the anti-pass law, and was found guilty of an unlawful discrimination, and it may also be said that the anti-discrimination act was referred to in *State v. Martyn, supra*, for the sole purpose of showing that the contract

which the defendant insists has been violated by the terms of the anti-pass law was abrogated by that act and must be declared void as against public policy. Therefore, it is no defense to the charge contained in the information.

For the sole reason that the state failed to prove the venue in this case, the judg: :ent of the district court is reversed and the cause is remanded for further proceedings.

REVERSED.

SEDGWICK, J., dissenting.

It is said in the majority opinion that the fact that the trial was had in the county where the alleged crime was committed must be proved beyond a reasonable doubt. This was the ancient rule, and it is still, no doubt, adhered to in some jurisdictions. It does not seem to be based upon reason. The presumption that a defendant is innocent, and the rule that his guilt must be proved beyond a reasonable doubt before he can be degraded and punished, have basis in humanitarian consideration as well as in law, but the place of trial is no part of the defendant's case, and does not in fact affect the question of his guilt or innocence. It seems to me that the courts are gradually rejecting the doctrine that the venue must be proved beyond a reasonable doubt, and in many of the states it is sufficient if it is proved by a preponderance of the evidence. There need be no direct evidence upon this point. The fact may be inferred from the circumstances. *Cox v. State,* 28 Tex. App. 92; *Richardson v. Commonwealth,* 80 Va. 124; *Andrews v. State,* 21 Fla. 598; *State v. Dent,* 6 S. Car. 383; *State v. Burns,* 48 Mo. 438; *People v. Manning,* 48 Cal. 335; *Croy v. State,* 32 Ind. 384. If it is true, as stated in *State v. Crinklaw,* 40 Neb. 759, that the object of the law in giving the defendant the right of trial in the county where the crime is alleged to have been committed is to afford the defendant "the benefit of his good character," that reason does not obtain in this case, for the defendant is located in both counties and is no doubt equally well known in both. It is held in *State v. Crink-*

*law, supra,* that "the constitutional right to a trial before
a jury of the county or district where the crime is alleged
to have been committed is a mere personal privilege of the
accused, and not conferred upon him from any considera-
tions of public policy. It follows that such right may be
waived by the accused, and in practice will be held to be
waived by an application for a change of venue under the
provisions of the criminal code." This seems to be good
doctrine. If this action had been begun in another county,
the defendant might upon his application have transferred
it to Lancaster county where in fact it was tried. If he
could have transferred it to Lancaster county and the case
could properly be tried there, why might he not remain
quiet if the state should attempt to remove it to Lancaster
county, and thereby consent to such removal and waive the
right to a trial in some other county where the alleged
crime is supposed to have been committed? Again, if we
concede that the defendant might have insisted upon a
trial in Douglas county, it still might have preferred that
the trial should take place in Lancaster county, and after
the state begins the prosecution in Lancaster county, as
the defendant did desire, why may it not by remaining
quiet consent that the trial should be had in the county of
its choice, and so waive the privilege of insisting upon a
trial in another county? It seems to me that the rule that
a defendant may waive the right to insist upon a trial in
any particular county, and that if he goes to trial without
objection he does so, is in accord with reason and modern
conditions, and that the rule that the venue may be proved
by a preponderance of the evidence. and may be inferred,
as any other fact may, from the circumstances and condi-
tions of the trial, is also. This is held in *Kennison v.
State,* 83 Neb. 391. In that case the defendant applied
for change of venue. The statute provides that, when such
an application is granted, the venue shall be changed to an
adjoining county. The court granted the change, but sent
the case to a county not adjoining. There was no authority
for this in the language of the statute. The defendant

made no objection to the place of trial until after the trial was finished, and it was held that he had waived his privilege of trial in an adjoining county. The opinion indicates that the rule as to waiver of a "mere personal privilege" is the same whether this privilege is allowed by statute or by the constitution.

This case was tried wholly upon a stipulation of facts. A construction of the recent statute in regard to the giving of passes by railroad companies was desired and other matters were assumed in the stipulation. The defendant never directly challenged the attention of the court to the question as to whether the case was being tried in the proper county. It asked for an instruction because the evidence was not sufficient to support a conviction, but there is nothing to indicate that this request was predicated upon the question of venue. It appears rather that the facts in regard to the contract between the defendant and the party to whom the pass was given, and the facts in regard to the services to be rendered by the defendant, were presented and discussed under this objection. After the verdict the defendant again suggested that the evidence was insufficient, but there is nothing to indicate that any of the parties had in mind any objection to the place of trial, and even in the assignments in this court the question of the place of trial is not specifically mentioned. Evidently the defendant is seeking a technical reversal predicated upon a supposed oversight. Such reversals are not favored and are continually becoming less frequent. It is recited in the contract, which is made a part of the stipulation of facts, that Dr. Graham, to whom the pass was given, was appointed in connection with the giving of the pass "as district surgeon at Lincoln, Nebraska," and that he was "of Lincoln, Nebraska," and that "the Union Pacific Railroad Company delivered to the said Dr. F. A. Graham" the pass in question, and that the pass was "over the line of the Union Pacific Railroad Company in Nebraska." The information charged that the pass was issued and given to Dr. Graham in Lancaster county, Ne-

braska, and it seems to me that the recitals in the stipulation that Graham resided in Lincoln, and that he was to perform his services in Lincoln, and that the defendant delivered the pass to Graham, without any qualification or restriction, amounts to admission that the pass was delivered as charged in the information. There is nothing in the stipulation of facts that is inconsistent with that view, and nothing that in any way tends to raise any issue with the allegations of the information as to the place of delivery.